# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 ℭ𝔬𝔲𝔯𝔱
## for the 𝔑𝔬𝔯𝔱𝔥𝔢𝔯𝔫 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔒𝔨𝔩𝔞𝔥𝔬𝔪𝔞

---

Case No. 23-cr-331-5-JDR

---

UNITED STATES,

*Plaintiff,*

*versus*

ANTONIO ERNESTO MUNOZ,

*Defendant.*

---

## OPINION AND ORDER

---

Defendant Antonio Ernesto Munoz pleaded guilty to the single count of wire fraud conspiracy based on his participation in a scheme known as the Artemis Refund Group, or ARG. Dkt. 425 The United States Probation Office's initial Presentence Investigation Report, disclosed to the parties on July 25, 2025, found the total loss attributable to Mr. Munoz from the conspiracy to be $3,503,652.97. *See* Dkt. 461. Mr. Munoz objected to the PSR [Dkt. 536], disputing the loss amount attributed to him. The Court held an evidentiary hearing on September 29, 2025. Dkt. 555. At the Court's request, the parties filed post-hearing proposed findings of fact and conclusions of law. Dkts. 560 and 563. The Government proposes that Mr. Munoz is responsible for losses in excess of $9,000,000, and Mr. Munoz argues that he is responsible for less than $263,468.08. After reviewing the evidence presented by the parties and the information disclosed to the Probation Office, the Court finds that the total loss attributable to Mr. Munoz under the U.S. Sentencing Guidelines exceeds $1,500,000 but does not exceed $3,500,000.

No. 23-cr-331-5

## I

The Government did not object to the initial PSR, but Mr. Munoz objected to the Probation Office's determination that the total loss attributable to him under USSG 2B1.1(b)(1)(I) was $3,503,652.97. Mr. Munoz argued that he was responsible for losses of only $263,468.08, an amount reflecting the losses solely perpetrated by Mr. Munoz. Dkt. 563 at 3-4. Additionally, Mr. Munoz argued that the Probation Office incorrectly based its calculation on a spreadsheet (the "ARG spreadsheet") that included transactions he did not know about and could not have foreseen. *Id.*

The Government did not object to the PSR calculations, but it did respond to Mr. Munoz's original objection. Dkt. 540. In its response, the Government argued that Mr. Munoz was responsible for losses in excess of $2 million, which was consistent with the calculation in the PSR. At the Court's evidentiary hearing on September 29, 2025, the Government presented one witness, Federal Bureau of Investigation Special Agent Preston Ackerman, and twenty exhibits.

The Government's proposed findings [Dkt. 560] assert a total loss of $9,289,053. The Government argued that, in addition to the evidence at the hearing, the following exhibits support its proposed loss amount: ARG spreadsheet, $2,600,000; gift card refunds, $200,000; E-Market Capital records, $268,903.37; Home Depot, $80,000; merchandise recovered from shipping containers, $761,150; Ressu Refunds spreadsheet, $5,300,000; and communications regarding a "Wally Spot" money laundering scheme, $79,000.

Mr. Munoz's proposed findings [Dkt. 563] set forth a total loss attribution of no more than $263,468.08. Mr. Munoz contends that his role in the refund fraud conspiracy was limited to that of minor participant and that he is liable for, at most, $200,000 in total orders through ARG. Mr. Munoz argues he did not share a common plan with others or act in furtherance of

No. 23-cr-331-5

others' conduct in ARG and that, as a result, he should not be held accountable for others' actions. Mr. Munoz proposes the following loss amounts: ARG spreadsheet, $200,000; PayPal and Discover account return deposits, $27,852.77; and eBay profits, $35,615.31. Mr. Munoz contests all other loss amounts proposed by the Government.

## II

The Court must find the amount of loss attributable to Mr. Munoz to determine the appropriate enhancement to his base offense level of 7. There are three proposed loss calculations before the Court: the revised PSR, the Government's, and Mr. Munoz's. The revised PSR calculated a total loss of $3,503,652.97 that, if accepted, would result in an eighteen-level enhancement to the base offense level under USSG §2B1.1(b)(1)(J), because the loss was more than $3,500,000 but not more than $9,500,000 (*see* revised PSR ¶ 21). With the uncontested two-level enhancement for sophisticated means, the total base offense level would be 27. After a three-level decrease for acceptance of responsibility, the total offense level would be 24, and the calculated guideline range of imprisonment would be 51 to 63 months' imprisonment (*see* revised PSR ¶ 46).

The Government argues that the loss attributable to Mr. Munoz totals $9,289,053. If accepted, this loss amount would result in an eighteen-level increase under USSG §2B1.1(b)(1)(J). According to the Government, the total offense level should be 24 with a guideline range of 51 to 63 months' imprisonment, which is consistent with the calculation in the revised PSR.

Mr. Munoz argues that the total loss amount is $263,468.08, resulting in a twelve-level enhancement under USSG §2B1.1(b)(1)(G). Mr. Munoz therefore asserts that his total offense level is 18, which corresponds to a guideline range of 27 to 33 months' imprisonment.

No. 23-cr-331-5

### III

Under USSG §2B1.1 comment. (3(B)), the Court need only make a reasonable estimate of the loss attributable to a defendant after assessing the evidence. The Court's estimation of loss must be sufficient to determine the appropriate guideline range. *Id.* The Court has considered evidence presented by both parties, including the testimony of Special Agent Ackerman and the subsequent filings, in reaching its estimate.

### A

The Court notes at the outset that certain categories of loss are not at issue. Mr. Munoz does not contest, and the Court finds, that the hearing evidence supports Mr. Munoz's responsibility for the following loss amounts: ARG spreadsheet amounts totaling $200,000 [Dkt. 563 at 3]; PayPal and Discover returns totaling $27,852.77 [Dkt. 563 at 3]; and eBay profits totaling $35,615.31 [Dkt. 563 at 3]. Mr. Munoz admits that the losses attributable to him from that evidence falls between $250,000 and $550,000. *See* USSG 2B1.1(b)(1)(G). Based upon Mr. Munoz's agreement, the Court finds that the loss amount is at least $263,468.08. The Court begins its loss calculation with that as the base amount.

### B

The parties' disagreements over the appropriate loss attribution encompass two separate issues: First, which ARG transactions may fairly be attributed to Mr. Munoz? Second, can Mr. Munoz be held responsible for the value of goods found in his home that were obtained during the course of the conspiracy? The Court addresses each issue in turn.

### 1

The Court finds that the loss attributable to Mr. Munoz based on the fraudulent activities of ARG to be $2,577,039.10 as reflected in the revised

No. 23-cr-331-5

PSR at ¶ 10.[1] This amount is approximately $22,960.90 less than the amount requested by the Government. Dkt. 560 at 13, ¶ 60. The discrepancy results from the timeframes used by the Government and the Probation Office. When the Probation Office calculated the loss amount for ARG, it used a narrower timeframe to account for the period during which Mr. Munoz was involved: September 2020 to June 2022. PSR at ¶ 10. The Government, however, argues that Mr. Munoz should be held responsible for conduct that falls outside of this timeframe because his "first involvement" with ARG was in August 2021. The Government has not established by a preponderance of the evidence that Mr. Munoz was participating in the conspiracy during the broader timeframe. The Court therefore finds that the loss attributed to Mr. Munoz should be limited to those incurred during the period of his involvement in the conspiracy from September 2020 to June 2022, and adopts the amount in the revised PSR, which is supported by a preponderance of the record evidence. The Court rejects Mr. Munoz's assertion that the loss amount attributable to ARG is limited to $200,000 as Mr. Munoz's assertion is not supported by the evidence of record.

Mr. Munoz asserts that, regardless of the losses attributable to ARG, he should not be responsible for those losses because he did not actively recruit individuals to participate in the conspiracy. Dkt. 563 at 2. The Government's evidence proves otherwise. The Government has shown by a preponderance of the evidence that Mr. Munoz's role was not that of a mere consumer [see Dkt. 563 at 2–8], and Mr. Munoz should be held accountable for both his own actions and those of coconspirators during the relevant time period. In making this determination, the Court has considered the factors in USSG §1B1.3(a)(1)(B), which hold a defendant accountable for the acts of others if his conduct is (i) within the scope of the jointly undertaken criminal

---

[1] The PSR mistakenly attributed the loss amounts in the spreadsheet in this paragraph to a different log not associated with ARG. The Government clarified through testimony that the spreadsheet from which these losses were derived was from ARG.

No. 23-cr-331-5

activity, (ii) in furtherance of that criminal activity, and (iii) reasonably fore-seeable in connection with that criminal activity.

The evidence shows that Mr. Munoz was aware that many others within ARG were conducting transactions like his [Dkt. 563 at 2 – 8], and that their actions were in furtherance of the same jointly undertaken fraudulent scheme. The Court finds that the jointly undertaken activity was reasonably foreseeable because Mr. Munoz used multiple Google email accounts to fa-cilitate and track fraudulent returns, orchestrated with co-defendant Kevin Rocha to store fraudulently obtained items at Mr. Rocha's primary residence to assist Mr. Munoz, and communicated with indicted and unindicted cocon-spirators to facilitate return fraud through various methods, including ship-ping label manipulation.

A review of Mr. Munoz's communication with Mr. Rocha further de-tailed the storage method for various goods recovered from Mr. Rocha's res-idence. A search of Mr. Rocha's house recovered multiple boxes of unopened merchandise, unused shipping labels with the names "Wyatt Miller" and "Antonio Munoz," and a Munbyn label printer. Given this evidence, the vol-ume of recovered communications Mr. Munoz maintained with individuals within ARG, Mr. Munoz's directions to Mr. Rocha to facilitate Mr. Rocha's house as a storage center for fraudulently obtained goods for the sole purpose of reselling them for profit, and the shipping labels created by Mr. Rocha that identified Mr. Munoz, the Court finds that the actions of the coconspirators in furtherance of the jointly undertaken conspiracy to commit fraud were rea-sonably foreseeable to and attributable to Mr. Munoz. The $2,377,039.77 at-tributed to ARG during Mr. Munoz's participation in that group will be added to the base loss amount for which Mr. Munoz admits responsibility.

2

The Government contends that Mr. Munoz should be held responsi-ble for the value of the fraudulently obtained goods recovered from his house,

No. 23-cr-331-5

in addition to the other amounts already attributable to him. The Government presented evidence that those stolen goods have a value of $761,150. But it is unclear from the PSR, the testimony of the agent, and the other evidence presented whether Mr. Munoz has already been held accountable for those items. The Court cannot discern whether those items are accounted for in the ARG loss amount, and the Government has not presented reliable evidence that they are not. The Court finds that the Government has not shown by a preponderance of the evidence that the value of the recovered goods are not accounted for in the ARG loss amount. Therefore, the value of those goods will not be included in the estimation of loss and shall be removed from the revised PSR loss calculation.

C

The Court turns to the Government's argument that Mr. Munoz should be held responsible for losses attributable to other schemes outside of ARG, including the "Ressu Refunds" scheme and the Wally Spot money laundering scheme. Although these losses were not included in the revised PSR, the Government did not object that the revised PSR's loss amount was too low. Instead, the Government sought to attribute these substantial loss amounts to Mr. Munoz for the first time at the evidentiary hearing, arguing that Mr. Munoz was responsible for a loss of $5,300,000 through the "Ressu Refunds" scheme and a loss of $79,000 for his role in the "Wally Spot" money laundering scheme. Dkt. 560 at 10-12.

Mr. Munoz disputes that these losses are attributable to him. He argues that there is an absence of evidence tying his actions to customers who placed orders in the Ressu Refunds scheme. He concludes that no evidence supports the loss amounts presented by the Government to him or the United States Probation Office prior to the evidentiary hearing and that these amounts should not be considered under Local Criminal Rule 32-4 and Federal Rule of Criminal Procedure 32(f).

No. 23-cr-331-5

The Court agrees with Mr. Munoz and finds that the Government did not show, by a preponderance of the evidence, that Mr. Munoz was responsible under the Sentencing Guidelines for the Ressu Refunds losses or the Wally Spot losses. Those losses were not reasonably foreseeable to Mr. Munoz. The only tie between Mr. Munoz and these losses is (1) a job application and (2) the appearance of Mr. Munoz's name in a spreadsheet. That evidence is insufficient to connect Mr. Munoz to the entire Ressu Refunds or Wally Spot losses. Because the Government did not meet its burden to hold Mr. Munoz responsible for those losses, the Court will not add them to its loss calculation.

### III

After considering the testimony and exhibits from the hearing, the Court finds by a preponderance of the evidence that Mr. Munoz is accountable for a total loss amount exceeding $1,500,000 but not exceeding $3,500,000. The loss amount is composed of the amounts to which Mr. Munoz does not dispute plus the ARG losses for the time period set forth in the revised PSR. Mr. Munoz is therefore subject to the sixteen-level enhancement to the base offense level under USSG §2B1.1(b)(1)(I). The loss amount at ¶ 16 of the revised PSR shall be reduced by $761,150, and reflect a total loss of $2,742,502.97. The total offense level shall be reduced by two-levels, reflecting a total offense level of 22. The applicable guideline range for imprisonment is therefore adjusted to 41 to 51 months' imprisonment. Sentencing is scheduled for Monday, December 22, 2025, at 11:00 a.m.

DATED this 3rd day of December 2025.

JOHN D. RUSSELL
*United States District Judge*